No. 13-1779

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

QUINTON BROWN, JASON GUY, RAMON ROANE, ALVIN SIMMONS,
SHELDON SINGLETARY, GERALD WHITE, and JACOB RAVENELL,
individually and on behalf of the class they seek to represent,

Plaintiffs-Appellants,

v.

NUCOR CORPORATION AND NUCOR STEEL-BERKELEY,

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the District of South Carolina

_____

## BRIEF OF APPELLEES

_____

Cary A. Farris
John K. Linker
J. Shannon Gatlin
ALANIZ SCHRAEDER LINKER
FARRIS MAYES, LLP
2500 CityWest Blvd.
Suite 1000
Houston, TX 77042
(281) 833-2200

Lisa S. Blatt
Dirk C. Phillips
Sarah M. Harris
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
(202) 942-5000
lisa.blatt@aporter.com

(additional counsel listed on inside
cover)

_Counsel for Appellees Nucor Corporation and Nucor Steel-Berkeley_

November 18, 2013

J. Tracy Walker, IV
Robert L. Hodges
Matthew A. Fitzgerald
MCGUIREWOODS, LLP
One James Center
901 East Cary Street
Richmond, VA 23219
(804) 775-1000

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1779__      Caption: __Quinton Brown et al v. Nucor Corporation and Nucor Steel-Berkeley__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Nucor Corporation and Nucor Steel-Berkeley__
(name of party/amicus)

_____

who is _____appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☑YES ☐NO

2.      Does party/amicus have any parent corporations?                        ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Lisa S. Blatt _____    Date: __November 18, 2013__

Counsel for: Appellees _____

## CERTIFICATE OF SERVICE
****************************

I certify that on __November 18, 2013__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Lisa S. Blatt _____            November 18, 2013 _____
(signature)                                            (date)

- 2 -

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ..................................i

TABLE OF AUTHORITIES ...........................................iv

STATEMENT OF THE ISSUE..........................................1

INTRODUCTION ..................................................1

STATEMENT OF THE CASE.........................................3

STATEMENT OF FACTS ...........................................5

      A.   Background ..........................................5

      B.   Nucor-Berkeley's Promotions Practices..................8

      C.   Plaintiffs' Class Action ...............................12

SUMMARY OF ARGUMENT .......................................14

STANDARD OF REVIEW ..........................................16

ARGUMENT ....................................................17

I.    Plaintiffs' Failure to Satisfy Rule 23(b)(3) Required Decertification..............17

II.   Plaintiffs' Inability to Establish Commonality Under Rule 23(a) After *Wal-Mart* Also Compelled Decertification ................................21

      A.   The District Court Properly Re-Examined Certification After *Wal-Mart* ..................................22

      B.   *Wal-Mart* Bars Class Certification Because Plaintiffs Cannot Establish a Common Policy Underpinning Promotions Decisions ...............................27

      C.   Plaintiffs' Evidence Fails to Show Commonality ........34

           1.   Wal-Mart *Repudiated This Court's Prior Approach to Reviewing the Evidence* ....................35

2.  *Plaintiffs' Statistical Evidence Is Inadequate Proof of Plantwide Discrimination* ....................................................37

3.  *Plaintiffs' Anecdotal Evidence Fails to Show a Common, Plantwide Policy of Discrimination* ...................................47

4.  *The District Court Properly Considered Nucor's Affidavits* ...........................................................................58

CONCLUSION ...................................................................................61

STATEMENT REGARDING ORAL ARGUMENT ...............................................61

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) ................................................................. 36-37

*Anderson v. Douglas & Lomason Co.*,
   26 F.3d 1277 (5th Cir. 1994) ................................................................13

*Anderson v. Westinghouse Savannah River Co.*,
   406 F.3d 248 (4th Cir. 2005) ...............................................................42

*Bennett v. Nucor Corp.*,
   2006 WL 2473015 (E.D. Ark. Aug. 25, 2006) ..................................31

*Bennett v. Nucor Corp.*,
   656 F.3d 802 (8th Cir. 2011) ..........................................3, 31, 42, 45

*Bennett v. Nucor Corp.*,
   No. 1:03-cv-01180-HFB (W.D. Ark.) ....................................................3

*Bolden v. Walsh Constr. Co.*,
   688 F.3d 893 (7th Cir. 2012) ...............................................................32

*Brown v. Nucor Corp.*,
   576 F.3d 149 (4th Cir. 2009) ....................................................passim

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ......................................... 17, 19-20, 39

*D.L. v. District of Columbia*,
   713 F.3d 120 (D.C. Cir. 2013) ............................................................23

*Davis v. Cintas Corp.*,
   717 F.3d 476 (6th Cir. 2013) ...............................................................60

*Doe v. Chao*,
   511 F.3d 461 (4th Cir. 2007) ...............................................................16

*Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214 (9th Cir. 2007) ........................31

iv

*Dukes v. Wal-Mart Stores, Inc.*,
  603 F.3d 571 (9th Cir. 2010) (en banc) ........................................................28, 35

*Ealy v. Pinkerton Gov't Servs., Inc.*,
  514 F. App'x 299 (4th Cir. 2013) ..................................................................23

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........................................ 35-36

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ........................................................................23

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ...................................................................16, 22

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013)....................................................................19-21

*King v. Nucor Corp.*,
  No. 5:04-cv-02533 (N.D. Ala.)..........................................................................3

*Kozlowski v. Hampton Sch. Bd.*,
  77 F. App'x 133 (4th Cir. 2003) ....................................................................55

*M.D. ex rel. Stukenberg v. Perry*,
  675 F.3d 832 (5th Cir. 2012) .........................................................................23

*Mullen v. Princess Anne Volunteer Fire Co.*,
  853 F.2d 1130 (4th Cir. 1988) .......................................................................54

*Parra v. Bashas', Inc.*,
  536 F.3d 975 (9th Cir. 2008) .........................................................................24

*Parra v. Bashas', Inc.*,
  291 F.R.D. 360 (D. Ariz. 2013) ......................................................................24

*Rhodes v. Cracker Barrel Old Country Store, Inc.*,
  213 F.R.D. 619 (N.D. Ga 2003) .....................................................................42

*Scott v. Family Dollar Stores, Inc.*,
  733 F.3d 105 (4th Cir. 2013) ..................................................................passim

*Sejman v. Warner-Lambert Co.*,
  845 F.2d 66 (4th Cir. 1988) ...........................................................................22

*Simmons v. Poe*,
   47 F.3d 1370 (4th Cir. 1995) ...........................................................16

*Slavinski v. Columbia Ass'n, Inc.*,
   2011 WL 1310256 (D. Md. Mar. 30, 2011) ....................................59

*Soutter v. Equifax Info. Servs., LLC*,
   498 F. App'x 260 (4th Cir. 2012) ...................................................23

*Tabor v. Hilti, Inc.*,
   703 F.3d 1206 (10th Cir. 2013) ...................................19, 24, 30, 32

*Thorn v. Jefferson–Pilot Life Ins. Co.*,
   445 F.3d 311 (4th Cir. 2006) ...........................................................17

*United States ex rel. Ubl v. IIF Data Solutions*,
   650 F.3d 445 (4th Cir. 2011) ...........................................................17

*United States v. Bell*,
   5 F.3d 64 (4th Cir. 1993) .................................................................22

*United States v. Cnty. of Fairfax*,
   629 F.2d 932 (4th Cir. 1980) ...........................................................47

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)...............................................................passim

*Wang v. Chinese Daily News, Inc.*,
   __F.3d__, 2013 WL 4712728 (9th Cir. 2013)................................24

*Warren v. Nucor Corp.*,
   No. 3:04-cv-1641-N (N.D. Tex. 2005).............................................3

*Yapp v. Union Pac. R.R. Co.*,
   229 F.R.D. 608 (E.D. Mo. 2005) .....................................................42

**STATUTES AND RULES**

42 U.S.C. § 1981 ....................................................................................3

Fed. R. App. P. 28(a)(9)........................................................................17

Fed. R. Civ. P. 23 ...........................................................................passim

vi

Fed. R. Civ. P. 23(a) ........................................................................passim

Fed. R. Civ. P. 23(a)(2) ...........................................................4, 23, 37

Fed. R. Civ. P. 23(b) ........................................................ 14, 17-18, 25

Fed. R. Civ. P. 23(b)(2) ................................................................. 17-18

Fed. R. Civ. P. 23(b)(3) ..................................................................passim

Fed. R. Civ. P. 23(c)(1)(C) ...........................................................14, 22

Fed. R. Civ. P. 23(f) ...........................................................................59

## OTHER AUTHORITIES

5 Newberg on Class Actions § 15:9 (4th ed.) .......................................59

Barbara T. Lindemann, Paul Grossman, & C. Geoffrey Weirich, 2
  *Employment Discrimination Law* (5th ed. 2012) .................................25

Bill Clinton, *Back to Work: Why We Need Smart Government for a Strong
  Economy* (2011) ...................................................................................6

Bill Clinton, *My Life* (2004) .................................................................6

18B Fed. Prac. & Proc. Juris. § 4478 (2d ed.) ....................................22

James R. Evans & William M. Lindsay, *Managing for Quality and
  Performance Excellence* (8th ed. 2011) ..............................................5

Jim Collins, *Good to Great: Why Some Companies Make the Leap . . . and
  Others Don't* (2001) ...........................................................................5

Ken Iverson, *Plain Talk* (1998) ...........................................................6

Nitin Nohria, William Joyce, & Bruce Roberson, *What Really Works*, Harv.
  Bus. Rev. 50 (July 2003) ....................................................................5

Nucor Corp. Form 10-K (2012), http://tinyurl.com/Nucor10K.................7

*Nucor-Yamato Prevails in Local Lawsuit*, PR Newswire, Nov. 3, 2009 ...........6

Regina Gordon, *Nucor Corporation: A Study on Evolution Toward Strategic
  Fit* (2007), http://tinyurl.com/UPennStudy. .......................................6

Richard Preston, *Annals of Enterprise: Hot Metal—I*, New Yorker, Feb. 25, 1991.........................................................................................................5

Susan Marks, *Incentives That Really Reward and Motivate*, 80 Workforce Mgmt. 108 (June 2001).........................................................................6

## STATEMENT OF THE ISSUE

Whether on remand from this Court's decision in *Brown v. Nucor Corp.*, 576 F.3d 149 (4th Cir. 2009), the district court abused its discretion in holding that certification of Plaintiffs' proposed promotions class no longer is warranted following *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), because Plaintiffs failed to present significant proof that they satisfied both Rule 23(a) and Rule 23(b)(3).

## INTRODUCTION

Plaintiffs sought certification of a class of current and former African-American employees at the Nucor-Berkeley steel plant who allege that every decision-maker discriminated against African-Americans in promotions. But class actions are "exception[s] to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart*, 131 S. Ct. at 2550. This case is not one of those exceptions. Federal Rule of Civil Procedure 23 prohibits courts from certifying a class unless Plaintiffs show they meet *both* the requirements of Rule 23(a) and (b); Plaintiffs satisfy neither.

The district court held that Plaintiffs failed to show that common issues predominate over individual ones, as Rule 23(b)(3) requires. Plaintiffs waived any challenge to that holding by failing to raise this issue on appeal. That waiver alone compels affirmance.

The district court also properly decertified Plaintiffs' promotions class because Plaintiffs cannot satisfy Rule 23(a) in light of *Wal-Mart*'s holding that Rule 23(a)'s commonality requirement imposes a high bar for plaintiffs—particularly in class actions based on Title VII pattern-or-practice claims. Like the *Wal-Mart* plaintiffs, Plaintiffs' complaint hinges on the fact that promotions decisions are left entirely to the discretion of individual managers and supervisors in each Nucor-Berkeley plant department. Like the *Wal-Mart* plaintiffs, Plaintiffs' allegation of commonality was based on the notion that Nucor gave decision-makers unfettered discretion and that this discretion united all class members' claims. Because Plaintiffs relied on the same arguments that *Wal-Mart* rejected, this case cannot proceed as a class action. No specific, common policy links the promotions decisions of six department managers and scores of supervisors who used vastly different criteria to make decisions.

Plaintiffs also fail to establish commonality under *Wal-Mart* because their evidence does not show that class members were *in fact* uniformly disadvantaged. Plaintiffs' statistical evidence of discrimination was unreliable. Plaintiffs' anecdotal evidence overwhelmingly focused on four decision-makers in a single department, and thus failed to show that *all* decision-makers in *all* departments made biased promotions decisions.

2

## STATEMENT OF THE CASE

In December 2003, a group of current and former African-American employees filed a putative class action against Nucor in the Western District of Arkansas. They alleged that at multiple Nucor plants, they were deprived of promotions based on a pattern or practice of intentional discrimination and practices having a disparate impact, in violation of Title VII and 42 U.S.C. § 1981. They also alleged that they faced hostile work environments. Compl., *Bennett v. Nucor Corp.*, No. 1:03-cv-01180-HFB (W.D. Ark. Dec. 8, 2003), ECF Nos. 1, 29.

The Arkansas district court severed the case into four separate actions. JA 1142-47 (Order). One was transferred to the Northern District of Alabama, one to the Northern District of Texas, and one to the Eastern District of Arkansas; in none of these cases did plaintiffs obtain class certification. In Alabama, plaintiffs never sought certification and the case was dismissed. *King v. Nucor Corp.*, No. 5:04-cv-02533 (N.D. Ala.). In Texas, the court struck the class allegations and the plaintiff voluntarily dismissed his complaint. *Warren v. Nucor Corp.*, No. 3:04-cv-1641-N, (N.D. Tex. May 19, 2005), ECF Nos. 23, 41. In Arkansas, the court denied certification of plaintiffs' promotions and hostile-work-environment classes, and the Eighth Circuit affirmed. *Bennett v. Nucor Corp.*, 656 F.3d 802, 816 (8th Cir. 2011).

The present appeal arises from the sole remaining action, which was transferred to Judge Houck of the District of South Carolina and concerns allegations of discriminatory promotions practices and a hostile work environment at the Nucor-Berkeley steel mill in Huger, South Carolina. JA 63-65 (Compl.); JA 477 (Order). Plaintiffs sought to certify two classes of 150 members: a promotions class and a hostile-work-environment class. JA 931 (Class Cert. Mot.).

The district court declined to certify either class. JA 8979-99 (Order). On appeal, a divided panel of this Court vacated and remanded the district court's order with instructions "to certify the appellants' class action and to engage in further proceedings consistent with this opinion." *Brown*, 576 F.3d at 160.

On remand, the district court held that Plaintiffs' proposed classes fell under Rule 23(b)(3), and initially certified both the promotions and hostile-work-environment classes. JA 9707 (Order). Nucor moved for decertification in light of *Wal-Mart*, and the court concluded that based on that opinion, Plaintiffs no longer could establish commonality under Rule 23(a)(2) or satisfy Rule 23(b)(3)'s additional and even more stringent requirements for their promotions class. The court decertified the promotions class but kept the hostile-work-environment class certified. JA 10945-72 (Order). This Court granted permission to appeal the decertification of the promotions class only. JA 11319 (Order).

## STATEMENT OF FACTS

### A.    Background

Nucor is a Fortune 500 company; the company and its affiliates employ over 8,000 people in 22 steel plants nationwide.  Nucor transforms millions of tons of scrap metal into the steel that builds skyscrapers, cars, highways, and household appliances.  The company has been dubbed "the Cinderella of the American steel industry," because it has prospered despite the precipitous decline of other domestic steel companies.  Richard Preston, *Annals of Enterprise: Hot Metal—I*, New Yorker, Feb. 25, 1991, at 58.

Business-school case studies and textbooks attribute Nucor's survival to its decentralized and incentive-oriented management structure.[1]  Each plant runs as an autonomous business, and plant managers delegate as much authority as possible to individual department managers, supervisors, and crews.  "Managers at the steelmaker lead by staying out of the way," concluded a *Harvard Business Review* study.  Nitin Nohria, William Joyce, & Bruce Roberson, *What Really Works*, Harv. Bus. Rev. 50 (July 2003).

Nucor's workers have the industry's highest productivity levels—not least because they receive production-based bonuses that can triple their base salaries.

---

[1]  *E.g.*, James R. Evans & William M. Lindsay, *Managing for Quality and Performance Excellence* 274-76 (8th ed. 2011); Jim Collins, *Good to Great: Why Some Companies Make the Leap . . . and Others Don't* 51-52, 136-37 (2001).

Susan Marks, *Incentives That Really Reward and Motivate*, 80 Workforce Mgmt. 108 (June 2001). According to former President Bill Clinton, who considered attracting Nucor to Arkansas his "biggest coup" as governor, Nucor's high pay, coupled with its "strict no-layoff policy" and its subsidization of college tuition for employees' children, "inspired great loyalty." Even in tough times, "no one at Nucor wanted to quit." Bill Clinton, *My Life* 321 (2004); Bill Clinton, *Back to Work: Why We Need Smart Government for a Strong Economy* 91-92 (2011).

Although low-level managers set most of their own rules, Nucor has one universal policy relevant here: racial discrimination is not tolerated. In 1962, when South Carolina businesses remained heavily segregated, Nucor's founder integrated Nucor's first South Carolina plant because he believed the company could succeed only by fostering an egalitarian workplace. *See* Regina Gordon, *Nucor Corporation: A Study on Evolution Toward Strategic Fit* 7 (2007), http://tinyurl.com/UPennStudy. Since then, Nucor repeatedly voiced its commitment to treating all employees with equal respect, and the NAACP has named Nucor an Employer of the Year. *Nucor-Yamato Prevails in Local Lawsuit*, PR Newswire, Nov. 3, 2009; Ken Iverson, *Plain Talk* 21-23, 51-56 (1998).

Nucor-Berkeley, like all Nucor plants, is an "Equal Opportunity Employer" with a plantwide policy barring racial discrimination. JA 8807-09, 8893-97 (Policy). Plaintiffs misrepresent facts about Nucor-Berkeley and its anti-

discrimination policy.  Nucor-Berkeley is hardly a "small plant," Br. 3; it currently employs 900 people, spans 8,000 acres and 2.17 million square feet of buildings, and has its own seaport and railroad hub.  *See* JA 763 (Map); Nucor Corp. Form 10-K, at 13 (2012), http://tinyurl.com/Nucor10K.  Before Plaintiffs initiated EEOC charges in 2002, Nucor promoted an African-American employee, William Roberson, to department manager.  JA 6789 (Roberson Aff.); *cf.* Br. 17.  Before this suit, Nucor also promoted other African-Americans to supervisory roles, including Andre Porcher, a Hot Mill supervisor; Robert Harleston, a Hot Mill lead man; and Theron Denmark, a Cold Mill lead man.  JA 6230 (T. Denmark Aff.); JA 6380 (Harleston Aff.); JA 6704 (A. Porcher Aff.).  Before this suit, Plant Manager Ladd Hall admonished employees whose racially offensive emails came to his attention, and sent plantwide emails "sa[ying] he apologized for it and it would not happen again and that the issue had been dealt with and he included a reaffirmation of Nucor's zero tolerance policy for racially insensitive behavior."[2]  Hall suspended without pay employees who used racially offensive language.  *E.g.*, JA 6712-13 (A. Porcher Aff.); JA 6567 (Major Aff.); JA 7096-97 (Nick Dep.).

---

[2] JA 6149-50 (Cobin Aff.); *accord* JA 6211-12 (D. Denmark Aff.); JA 6237-38 (T. Denmark Aff.); JA 6302-03 (Gethers Aff.); *see also* JA 720-22 (Pew Dep.); JA 6923 (Snider Aff.).

Multiple affiants also attested that Hall prohibited employees from displaying the Confederate flag.[3]

### B.    Nucor-Berkeley's Promotions Practices

When this suit was filed, Nucor-Berkeley employed 611 workers, of whom 71 were African-American. *Brown*, 576 F.3d at 151. Most employees work in one of six departments: the Melt Shop, Hot Mill, Cold Mill, Beam Mill, Shipping, and Maintenance.

Each department operates as an independent business. Each has its own manager, who oversees numerous supervisors. Each maintains its own budget, tracks its own profits and losses, and calculates bonuses based on its own production. Each employs workers whose jobs are entirely department-specific, because each department performs markedly different functions. JA 7102 (Ferguson Aff.); JA 7891 (Reynolds Aff.); JA 7899 (Smith Aff.); JA 7903 (Solomon Aff.).

Melt Shop workers grind scrap metal, heat it into a liquid, add alloys, and cast it into semi-finished shapes. JA 7938-45 (Bell Dep.). From there, the unfinished steel takes two paths. Steel slabs go to the Hot Mill to be reheated until the steel is malleable enough to roll into giant coils. JA 7903-04 (Solomon Aff.).

---

[3] *E.g.*, JA 1878-81 (Clark Dep.); JA 6162 (Crummey Aff.); JA 6264-65 (Dunn Aff.); JA 6373-74 (Hamilton Aff.); JA 6673 (Peeler Aff.); JA 6796-97 (Roberson Aff.); JA 6923 (Snider Aff); JA 7091-02 (Nick Dep.).

Some coils go directly to outside customers; others go to the Cold Mill, where they are tempered and texturized to customer specifications. JA 7899-90 (Smith Aff.). Unfinished hunks of dog-bone-shaped steel instead go from the Melt Shop to the Beam Mill, where workers reheat and roll the metal into beams. JA 7882-84 (Ferguson Aff.). Shipping employees package and move product for customers; they too function independently. Maintenance employees ensure that electrical and mechanical systems in every department function properly.

Nucor's philosophy of decentralization extends to Nucor-Berkeley's promotions process. Department managers set the process in motion by sending postings for available promotions to Personnel employees, who performed a purely clerical role and advertised postings plantwide. JA 8147-53 (Barnhill Dep.). Any plant employee could bid on any post; once the bidding period ended, Personnel sent applications to department managers. JA 477 (Order); JA 7205-7851 (postings and applications). Each department then had total discretion to fill promotions as it saw fit. *Brown*, 576 F.3d at 151. Plant Manager Hall played no substantive role in the promotions process, which he explained was "not my area of responsibility. I have department managers that make those decisions," and "each department has their own way of doing that." JA 1723, 8163 (Hall Dep.); *accord* JA 8033 (Smith Dep.). Department managers also were free to disregard the promotion guidelines in the Employee Handbook. JA 1721-22 (Hall Dep.).

9

Departments exercised their independent control over promotion procedures by creating utterly different processes. Some department managers made final decisions on promotions themselves; others relied entirely on their supervisors' judgments. Some departments gave the supervisor with the available promotion a lead role; others considered multiple supervisors' opinions. Some departments relied on job-specific tests and psychological evaluations; others relied only on interviews. Department practices were so independent that Shipping Manager Roberson noted, "I have no idea what the other departments do." JA 8109 (Roberson Dep.). Departments almost always promoted candidates already in their departments, because most promotions required extensive knowledge of jobs unique to that department. *See* JA 7894-95 (Reynolds Aff.); JA 7907 (Solomon Aff.); JA 8048-49 (Smith Dep.).

Thus, in the Melt Shop, department manager John Bell oversaw thirteen supervisors and six lead men (*i.e.*, crew leaders) at the time suit was filed. All were involved in promotions decisions. JA 7894, 7927 (Reynolds Aff.). Decisions were based on a "one hundred percent job specific" test tailored to each position; a psychological interview; and evaluations from supervisors, crew members, and Bell. The lead supervisor with the vacancy always interviewed candidates; other interviewers varied. JA 7927-33 (Bell Dep.). Candidates were ranked according

to their performance on the test, interviews, and evaluations. The candidate with the highest total score got the job. *See* JA 7927, 7934 (Bell Dep.).

In the Hot Mill, where department manager Thad Solomon oversaw eight supervisors and many lead men, multiple supervisors played a role in every promotion. Candidates took a "job specific knowledge test that was developed specifically for the Hot Mill"; those with exceptionally low scores may not progress further. The remaining candidates interviewed with two to eight supervisors, who each ranked candidates based on interview performance; safety, disciplinary, and attendance records; and past work performance. Solomon averaged these rankings and gave the job to the top-ranked applicant. JA 7908 (Solomon Aff.); JA 7971-94 (Solomon Dep.).

Cold Mill department manager Al Smith oversaw nine supervisors and twenty-two lead men, and consulted most of them before making the ultimate decision himself based on supervisors' interview evaluations; the candidates' work history, safety, and attendance records; and their job skills and training. For most supervisor and lead-men positions, Smith also weighed candidates' scores on job-specific tests that varied "almost every time the test is administered." JA 7900-02 (Smith Aff.).

In the Beam Mill, where department manager Paul Ferguson oversaw five supervisors and twelve crew leaders, the process was again different. Ferguson

11

delegated promotions decisions below a set pay grade to the supervisor or crew leader overseeing the job, who made decisions based on interviews. JA 7103-06 (Ferguson Aff.). For positions with a supervisory role, all supervisors interviewed and chose a candidate; Ferguson deferred to the consensus choice. JA 7995-8001 (McCarthy Dep.).

The Shipping Department, run by an African-American manager, William Roberson, gave candidates numerical scores. Twenty percent depended on a psychological evaluation; each supervisor's rating counted five percent; Roberson's rating counted thirty percent, and the remaining percent depended on the candidate's experience. JA 8113-25, 8131 (Roberson Dep.).

Maintenance department manager David Sumoski screened candidates using a technical aptitude test. Candidates with the requisite skills interviewed with some of the thirteen supervisors and Sumoski; criteria included past experience, teamwork, and communication and customer-service skills. Sumoski made final decisions himself. JA 8061-80, 8088 (Sumoski Dep.).

### C.    Plaintiffs' Class Action

After Plaintiffs filed suit, the parties engaged in protracted discovery. The court defined relevant records as records of promotions for which the seven named plaintiffs applied, as well as "similarly situated" promotions, *i.e.*, positions bid upon by at least one African-American that involved similar pay and qualifications

to the promotions the named plaintiffs sought.  JA 486-87 (Order); JA 923 (Mot. Hr'g).  Nucor produced all existing documents regarding all applicants for relevant promotions from December 1999 to December 2003, *i.e.*, the four years before this suit was filed.  JA 487-88 (Order); JA 336 (Defs' Resp.).[4]  No relevant records existed for promotions for the thirteen-month period from December 1999 to early January 2001, however.  By the time Nucor received the initial EEOC charge in 2002, these records no longer existed.[5]

In 2007, Plaintiffs moved to certify a 150-member class of "[a]ll African-Americans who are or were employed at . . . Nucor Berkeley . . . since December 2, 1999 in the beam mill, hot mill, cold mill, melting, maintenance, and shipping departments."  JA 931 (Class Cert. Mot.).  Plaintiffs sought class treatment for a pattern or practice of racial discrimination in (1) promotions, and (2) a hostile work environment.  *Id.*

Regarding the promotions class, Plaintiffs claim "Nucor has 'subjectivized' promotions to the point that supervisors and department managers are not required

---

[4] Nucor actually produced all existing records about specified promotions from 1999 to 2006. Plaintiffs chose not to use the data from 2004-2006, but that data, like the pre-lawsuit data, shows no adverse impact against African-Americans in promotions decisions.  JA 5886-87 (Welch Rpt.).

[5] Plaintiffs previously and erroneously alleged that Nucor "destroyed" pre-2001 data and failed to comply with record-keeping "obligation[s]" under the EEOC Guidelines.  JA 8477-88 (Class Cert. Reply).  The Guidelines are not binding, *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1287 n.13 (5th Cir. 1994), and in any event did not require Nucor to retain data for 1999-2000.  After receiving the initial EEOC charge in 2002, Nucor retained all of its records.  No court has found that Nucor acted improperly, much less unlawfully.

to follow any set policy or criteria, and are allowed to apply their own subjective opinion of what to consider and who to promote." JA 933 (Class Cert. Mot.). They allege that this "raw subjectivity" in promotions decisions "allowed racial bias to affect who is promoted." JA 962-63 (Class Cert. Br.). Plaintiffs submitted two types of evidence supporting certification: a statistical analysis from Drs. Liesl Fox and Edwin Bradley, and 16 declarations from present or former workers. Only the class status of the promotions claim is before the Court.[6]

## SUMMARY OF ARGUMENT

Rule 23 bars certification of a class action unless both Rule 23(a) and 23(b) are satisfied. The district court held that Plaintiffs' class action falls under Rule 23(b)(3), which requires Plaintiffs to prove that common issues predominate over individual ones. The district court held that Plaintiffs' promotions class cannot meet Rule 23(b)(3) because their legal theory raises numerous individual legal and factual issues that preclude class treatment. Plaintiffs do not dispute this holding on appeal; decertification should be upheld on this basis alone.

Even were this Court to reach the issues under Rule 23(a), the district court did not abuse its discretion in holding that Plaintiffs cannot satisfy Rule 23(a)'s commonality requirement after the Supreme Court's *Wal-Mart* decision. Rule 23(c)(1)(C) authorizes courts to continually assess whether a case should proceed

---

[6] Nucor has objected to the court's refusal to decertify the hostile-work-environment class, and reserves its right to appeal on that basis.

14

as a class action. The district court properly determined that this case no longer could proceed as a class after *Wal-Mart*. That decision wrought a sea change in class-action law that prompted numerous courts to revisit class certification and rejected the legal basis for this Court's decision in *Brown*. After *Wal-Mart*, plaintiffs in Title VII pattern-or-practice cases cannot establish commonality unless they identify a specific policy—*beyond* a general policy of vesting low-level managers with discretion over employment decisions—that unites class members' claims. But the only policy Plaintiffs identified as affecting all class members is Nucor's policy of delegating promotions decisions to the discretion of low-level decision-makers across six separate departments. Rather than tying their evidence to any specific policy, Plaintiffs insisted—based on the Ninth Circuit's overturned *Wal-Mart* decision—that Nucor's delegation of promotions decisions to supervisors' discretion sufficed to show commonality, even though decision-makers exercised their discretion in varying ways. Under *Wal-Mart*, such allegations prevent the case from proceeding as a class action.

The district court properly decertified Plaintiffs' class after *Wal-Mart* for another reason: *Wal-Mart* heightened the lenient standard this Court previously applied to review evidence of commonality. Regarding the statistical evidence, Plaintiffs' experts concede that Nucor's actual records do not suggest discrimination, and their experts inferred evidence of potential discrimination in

promotions only by inventing data for a thirteen-month period for which no actual promotions data exists. Under *Wal-Mart*, the district court appropriately held that Plaintiffs' statistical evidence was fundamentally unreliable because it depends on multiple unjustified and implausible assumptions.

The district court properly held that Plaintiffs' anecdotal evidence also did not show commonality. Plaintiffs' allegations of bias in promotions decisions were almost entirely confined to the Beam Mill. Because the promotions processes in each department are independent and markedly different, the district court properly declined to infer from that limited evidence that *all* departments' decision-makers exercised their discretion in a common, allegedly biased manner.

## STANDARD OF REVIEW

Whether the district court properly re-examined class certification in light of this Court's mandate is reviewed *de novo*. *Doe v. Chao*, 511 F.3d 461, 464 (4th Cir. 2007). Because *Wal-Mart* required re-examination of class certification, the district court should receive the usual "great deal of deference" accorded to certification decisions. *Simmons v. Poe*, 47 F.3d 1370, 1381 (4th Cir. 1995). The district court has "wide discretion" over whether to allow a class action. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (internal quotations omitted). Affirmance is required unless the court "ma[de] an error of law" or

"clearly err[ed] in its factual findings." *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006).

## ARGUMENT

## I.    Plaintiffs' Failure to Satisfy Rule 23(b)(3) Required Decertification

To obtain class certification, Plaintiffs must "affirmatively demonstrate . . . compliance" with Rule 23(a) *and* one of Rule 23(b)'s provisions. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotations omitted). Plaintiffs' opening brief does not dispute the district court's holding that Rule 23(b)(3) is the relevant provision and that Plaintiffs cannot satisfy its predominance requirement. Plaintiffs thereby waived any argument that the court abused its discretion in holding that Plaintiffs' failure to satisfy Rule 23(b)(3) independently justified decertification. Fed. R. App. P. 28(a)(9); *United States ex rel. Ubl v. IIF Data Solutions*, 650 F.3d 445, 456 (4th Cir. 2011). Decertification should be affirmed on this basis alone.[7]

Plaintiffs do not challenge Rule 23(b)(3)'s applicability for good reason: Judge Houck determined that Rule 23(b)(3) was the appropriate provision after searching for a provision of Rule 23(b) under which Plaintiffs could conceivably certify *any* class. Plaintiffs originally sought certification under Rule 23(b)(2) or a

---

[7] Plaintiffs also waived this issue on remand from this Court. The district court observed that the Plaintiffs had abandoned their proposal for a hybrid (b)(2)/(b)(3) class. JA 9702 (Order). Moreover, in response to Nucor's motion to decertify, Plaintiffs mentioned Rule 23(b)(2) once, never explained why a (b)(2) class might be appropriate, and assumed (b)(3) might also be appropriate. JA 10773 (Opp. Class Decert.).

17

"hybrid" (b)(2)/(b)(3) approach. JA 931-32 (Class Cert. Mot.). The district court's initial order denying certification did not reach Rule 23(b) because it held that neither of Plaintiffs' classes satisfied Rule 23(a). JA 8997 (Order). This Court disagreed, finding that Rule 23(a) was satisfied and that "our assessment inevitably leads us to conclude that . . . [Rule] 23(b)(3) ha[s] also been satisfied." Slip Op. 19, Brown v. Nucor, No. 08-1247 (4th Cir. Aug. 7, 2009), ECF No. 48. This Court then amended its opinion by deleting this sentence and a corresponding footnote— but left the instructions to certify intact. JA 9606 (Order); *Brown*, 576 F.3d at 160.

Thus, on remand, the district court faced a dilemma. No court had analyzed Rule 23(b) and there were serious questions about whether Plaintiffs could satisfy it—but the district court could not certify *any* class without reaching Rule 23(b). JA 9692-93 (Order). Moreover, the court could not certify Plaintiffs' class under Rule 23(b)(2) or a (b)(2)/(b)(3) hybrid, because Plaintiffs sought monetary damages and back pay. Rather than denying certification outright, Judge Houck stretched to accommodate this Court's instruction by analyzing certification under Rule 23(b)(3)—the appropriate class when monetary damages predominate over claims for injunctive relief. JA 9706-07 (Order).[8]

---

[8] *Wal-Mart* further foreclosed certification under (b)(2) by holding that (b)(2) is inappropriate when plaintiffs seek backpay. *See* 131 S. Ct. at 2558.

The district court initially concluded that Plaintiffs' promotions and hostile-work-environment classes satisfied Rule 23(b)(3). JA 9702-06 (Order). But after *Wal-Mart*, the court appropriately reassessed whether Plaintiffs satisfied Rule 23(b)(3)—a rule the Supreme Court called an "adventuresome innovation . . . framed for situations in which class-action treatment is not as clearly called for." *Wal-Mart*, 131 S. Ct. at 2558 (citation and internal quotations omitted). *Wal-Mart* held that a "policy" of delegating discretion to low-level managers generally cannot establish commonality. 131 S. Ct. at 2553-54. That holding made Rule 23(b)(3)'s predominance requirement exceedingly difficult to satisfy in Title VII cases like this one that challenge promotions decisions left to the "broad discretion" of individual managers. Such decisions inherently "involve highly individualized facts and defenses that cannot be effectively resolved in a class suit." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1230 (10th Cir. 2013) (internal quotations omitted).

The Supreme Court's *Comcast* decision further confirmed that Rule 23(b)(3)'s predominance standard is "even more demanding than Rule 23(a)," and requires a "close look" at whether common questions "*in fact*" predominate over questions that affect individual class members. *Comcast*, 133 S. Ct. at 1432 (internal quotations omitted); *accord In re Rail Freight Fuel Surcharge Antitrust*

*Litig.*, 725 F.3d 244, 255 (D.C. Cir. 2013).  *Comcast* and *Wal-Mart* together establish that class actions may proceed only in the most exceptional of cases.

The district court did not abuse its discretion in holding that even if Plaintiffs could establish commonality—and they did not, as discussed below—"'common issues,' as that term is defined by *Wal-Mart*, do not predominate over individual issues." JA 10956 (Order).  The "common issue" in this case is whether scores of decision-makers across numerous production departments exercised their discretion over promotions in a discriminatory manner, yet Plaintiffs' evidence overwhelmingly centered on one manager and three supervisors in the Beam Mill. The court found that almost "no evidence" suggested the Beam Mill's manager or supervisors had "any influence over the promotions decisions in other departments." JA 10958 (Order).  There was "little to no evidence" of discriminatory bias on the part of non-Beam Mill managers or supervisors, and "nothing to link" the scant evidence about other departments to behavior in the Beam Mill. JA 10959 (Order).

Those findings deserve substantial deference and show why common issues cannot predominate.  A jury hearing non-Beam Mill employees' claims "would have to delve into the merits of each individual promotion decision to determine whether there was a pattern of discrimination," which would "raise a myriad of individualized issues regarding the qualifications of particular employees." *Id.*

20

Nucor would be prejudiced if Plaintiffs could prove non-Beam Mill claims with evidence from the Beam Mill. "[I]t would clearly be unfair . . . to presume that an African-American employee in the Hot Mill or Shipping Department failed to receive a promotion because of a pattern of behavior on the part of individuals who had absolutely no ability to affect the promotion in question." *Id.* Plaintiffs' failure to satisfy Rule 23(b)(3) alone requires affirmance.

## II.    Plaintiffs' Inability to Establish Commonality Under Rule 23(a) After *Wal-Mart* Also Compelled Decertification

Plaintiffs' promotions class cannot be certified in all events because *Wal-Mart* marked "a dramatic shift in the law regarding class action certification" under Rule 23(a). *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 119 (4th Cir. 2013) (Keenan, J., concurring). Rule 23(a) requires that the proposed class share common issues of law and fact. *Wal-Mart* repudiated the prior view of that requirement—and thus superseded this Court's mandate—by demanding substantial proof that some *specific* policy caused common, classwide harm. *Wal-Mart*, 131 S. Ct. at 2552-56. The district court properly re-examined certification in light of this intervening change in the law. Because Plaintiffs failed to identify a specific policy that uniformly linked class members' claims, decertification was warranted on that basis alone. Plaintiffs' evidence also fails to show any plantwide discrimination, and thus cannot establish commonality. The district court did not abuse its discretion in finding that Plaintiffs' statistical evidence is too unreliable to

21

show discrimination, and that Plaintiffs' anecdotal evidence does not show plantwide discrimination because it is concentrated in one department.

## A. The District Court Properly Re-Examined Certification After *Wal-Mart*

Certainly, under the mandate rule, "the mandate of a higher court is controlling as to matters within its compass." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (internal quotations omitted). But just as certainly, lower courts may depart from this rule when, as here, "controlling authority has since made a contrary decision of law." *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988) (internal quotations omitted). The "easiest cases" to depart from a mandate occur "when the law has been changed by a body with greater authority on the issue." 18B Fed. Prac. & Proc. Juris. § 4478 (2d ed.). An intervening Supreme Court decision that significantly changes the controlling legal authority accordingly supersedes an appellate court's mandate. In other words, the district court must follow what the Supreme Court held. *See Sejman* 845 F.2d at 69. That rule applies with particular force in the class-action context, where the district court may "alter[] or amend[]" class certification orders any time "before final judgment," Fed. R. Civ. P. 23(c)(1)(C), and where the court "must be prepared to use its considerable discretion to decertify the class" if ensuing developments render certification inappropriate. *Gunnells*, 348 F.3d at 433 (internal quotations omitted).

1.    The Supreme Court's *Wal-Mart* decision dramatically changed the controlling authority and supersedes this Court's previous mandate ordering certification.  As the *Wal*-Mart dissenters observed, *Wal-Mart* made Rule 23(a)(2) "more demanding" and "no longer easily satisfied."  131 S. Ct. at 2565 (Ginsburg, J., dissenting in part) (internal quotations omitted).   Thus, this Court has overturned class certifications based on the need for a "more rigorous analysis into the Rule 23 requirements" after *Wal-Mart*.  *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 310-11 (4th Cir. 2013); *accord Souter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 266 (4th Cir. 2012).   Likewise, other circuits have observed that "*Wal-Mart*'s interpretation of Rule 23(a)(2) has changed the landscape."  *D.L. v. District of Columbia*, 713 F.3d 120, 126-27 (D.C. Cir. 2013). The Fifth Circuit vacated a class certification because *Wal-Mart* "heightened the standards for establishing commonality under Rule 23(a)(2)."   *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839, 841-44 (5th Cir. 2012).  The Ninth Circuit called *Wal-Mart* "new precedent altering existing case law" that required vacating a certified class and remanding for a new evaluation of commonality.   *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 974 (9th Cir. 2011).

Many district courts similarly have refused to certify classes after *Wal-Mart*, or decertified previously certified classes.  JA 10948 n.11 (Order).  In an analogous Title VII case, another district judge held that *Wal-Mart* allowed reconsideration of

a class certification despite a specific circuit court mandate. *Parra v. Bashas', Inc.*, 291 F.R.D. 360, 369-72 (D. Ariz. 2013). The district court initially deemed the plaintiffs' statistical and anecdotal evidence insufficient to show commonality; the Ninth Circuit reversed, emphasizing the "flexible standard" for commonality pre-*Wal-Mart*. *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-80 (9th Cir. 2008). On remand, the district court observed, "Prior to *Dukes*, the rule of mandate would have deprived this court of jurisdiction to revisit . . . [the] commonality finding." *Parra*, 291 F.R.D. at 369. But the "weight of authority" and an "independent examination" of *Wal-Mart* persuaded the court that *Wal-Mart* was "an intervening change in law," *id.* at 371, that allowed the court to revisit commonality. *Id.* at 372-76.

The many appellate reversals and district court decertification orders under *Wal-Mart* unmistakably illustrate *Wal-Mart*'s game-changing effect on *all* class actions, not just large nationwide classes of some unspecified number as Plaintiffs maintain. Br. 48-49. *Wal-Mart*'s holding applies irrespective of size. *E.g.*, *Wang v. Chinese Daily News, Inc.*, __F.3d__, 2013 WL 4712728, at *3-4 (9th Cir. 2013) (200 class members); *Tabor*, 703 F.3d at 1228-29 (294 class members). Accordingly, the leading employment law treatise considers *Wal-Mart* so transformative that it advises practitioners in any case to "consider [its] impact . . . before citing to any pre-2011 decision involving the application of Rule 23 in an

employment setting." Barbara T. Lindemann, Paul Grossman, & C. Geoffrey Weirich, 2 *Employment Discrimination Law* 33-20 (5th ed. 2012).[9]

2.     The district court properly considered whether *Wal-Mart* altered this Court's mandate, and correctly concluded that *Wal-Mart* foreclosed certification of Plaintiffs' promotions class. Plaintiffs accuse the district court of "decid[ing] not to follow this Court's mandate," "following the dissent," and "ha[ving] no authority" to apply *Wal-Mart* to the facts of this case. Br. 29-31. But Judge Houck faithfully implemented this Court's 2009 mandate and maintained the fairness and neutrality typical of a district judge who has served on the bench for four decades.

On remand, the court scrupulously implemented this Court's mandate even though doing so required unusual effort. As noted, the district court made extraordinary efforts to certify a class, despite the lack of any prior analysis by any court whether either of Plaintiffs' proposed classes satisfied Rule 23(b). *Supra* at 17-19. Nor did the court immediately rush to the conclusion that *Wal-Mart* would transform this case. Shortly after the Supreme Court granted certiorari in *Wal-Mart*, Nucor sought a stay, predicting that the case "could provide a basis for a sea

---

[9] Plaintiffs curiously state before this Court that the "plant has approximately 70 to 80 [class] members at any one time." Br. 49. Plaintiffs originally asserted that the class consisted of "approximately 300 black employees." JA 89 (Mot. to Compel). Their class-certification brief cut that number to 150 members. JA 979 (Class Cert. Br.). Their briefing below stated that the class had "approximately 90 to 100 members at any one time." JA 10793 (Opp. Class Decert.). The source of Plaintiffs' fluctuating numbers is not apparent.

change in the requirements for class certification." JA 9813, 9815 (Stay Mot.). The court declined to delay Plaintiffs' case. JA 9892 (Order).

Even after *Wal-Mart*, the court did not blithely "adopt the dissent" from this Court's 2009 decision. Br. 31. The court was well aware of the mandate rule, having applied it in Plaintiffs' favor in 2011. JA 9688 (Order). The court observed that *Wal-Mart* "unquestionably changes the nature of the class certification inquiry, but this Court does not regard it as a broad invitation to ignore the Fourth Circuit's prior holding." JA 10972 (Order). The court "attempted to fairly analyze *Wal-Mart* and to carefully apply its holdings to the facts of this case and the Fourth Circuit's opinion." *Id.* The court undertook "a thorough reexamination of an extensive record, significant study of the relevant authorities, and careful reflection upon both," *id.*, including a review of Plaintiffs' 16 declarations and "the affidavits of approximately 80" class members. JA 10950 (Order).

Only then did the court conclude that three aspects of *Wal-Mart* required decertification of Plaintiffs' promotions class: (1) unless plaintiffs identify some *specific* manner in which decision-makers commonly applied a "general policy of discrimination," plaintiffs cannot establish commonality; (2) "delegation of subjective decision-making is not, without more, a 'policy' that is sufficiently uniform to raise 'common' issues appropriate for resolution on a class-wide basis";

and (3) in pattern-or-practice Title VII cases, courts must delve into the merits of plaintiffs' claims to determine whether Rule 23 is satisfied. JA 10934-55 (Order). The court declined to decertify the hostile-work-environment class, based again on parsing this Court's 2009 decision and *Wal-Mart*. JA 10966, 10969 (Order).

Judge Houck has overseen this case for over nine years. The court's latest effort is a painstaking, 48-page review of *Wal-Mart*'s effect on this Court's *Brown* decision and an examination of an immense record to make new judgment calls in applying both *Brown* and *Wal-Mart*'s superseding authority. Some of those breaks have gone Nucor's way. Some have gone Plaintiffs' way. The court's judgment is worthy of the deference this Court ordinarily provides district courts on certification issues.

### B. *Wal-Mart* Bars Class Certification Because Plaintiffs Cannot Establish a Common Policy Underpinning Promotions Decisions

Plaintiffs cannot satisfy Rule 23(a)'s commonality requirement after *Wal-Mart*. Plaintiffs modeled their complaint and class-certification motion after the *Wal-Mart* plaintiffs' filings, arguing that the delegation of discretion to numerous low-level managers was a "policy" that raised common issues of discrimination among class members. Plaintiffs even stressed that no specific policy united promotions decisions because Nucor's supervisors and managers "apply their own subjective opinion" and "each supervisor may follow different criteria." JA 942 (Class Cert. Mot.). *Wal-Mart* rejected Plaintiffs' theory as a basis for certification.

The Supreme Court held that certification is appropriate only if the plaintiffs identify a *specific* policy that uniformly disadvantaged class members—and that a discretionary promotions process exercised by low-level managers in different ways cannot satisfy that requirement.

1.    Rule 23(a) authorizes certification only if plaintiffs establish "questions of law or fact common to the class," *i.e.*, a common, central contention uniting each class member's claims.  The *Brown* majority held that Plaintiffs' allegations of "a practice of disparate treatment in the exercise of unbridled discretion" qualified as such a common contention, and "rais[ed] questions of law and fact common to all [subject] black employees."  576 F.3d at 153 (internal quotations omitted).  The Ninth Circuit's *en banc* decision in *Wal-Mart* rested on identical reasoning: "Evidence of Wal-Mart's subjective decision-making policies suggests a common legal or factual question regarding whether Wal-Mart's policies or practices are discriminatory."  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 612 (9th Cir. 2010) (en banc).

*Wal-Mart* repudiated that analysis.  The Supreme Court concluded that in Title VII pattern-or-practice cases, plaintiffs have two means of proving commonality: they may show that a universal, biased testing procedure prejudiced every candidate, or they must produce "[s]ignificant proof that an employer operated under a general policy of discrimination" that "manifested itself in . . .

promotion practices in the same general fashion." 131 S. Ct at 2553 (internal quotations omitted). The *Wal-Mart* plaintiffs, like Plaintiffs here, chose the latter: they argued that discrimination resulted from a general policy of leaving decisions to store managers' discretion. *Id.* at 2554; JA 941-45, 962-64 (Class Cert. Br.).

*Wal-Mart* held that a company's policy of delegating promotions decisions to the discretion of low-level managers, without more, cannot supply common questions of law and fact. 131 S. Ct at 2554-55; *Scott*, 733 F.3d at 113; JA 10954-55 (Order). A "'policy' of *allowing discretion* by local supervisors" is "just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices." *Wal-Mart*, 131 S. Ct. at 2554.

Therefore, Plaintiffs must "identif[y] a common mode of exercising discretion that pervades the entire company," *id.* at 2554-55, *i.e.*, evidence that supervisors exercised their discretion "in a common way with some common direction." *Scott*, 733 F.3d at 113 (alteration and internal quotations omitted). Plaintiffs who solely allege a policy of discretionary decision-making that is exercised in a varying manner by individual decision-makers fail to establish commonality no matter what evidence they produce. "[M]erely proving that the discretionary system has produced a racial or sexual disparity *is not enough*" if plaintiffs fail to "identify[] the specific employment practice that is challenged."

*Wal-Mart*, 131 S. Ct. at 2555 (internal quotations omitted); *accord Scott*, 733 F.3d at 113. "[A]fter *Wal–Mart*, federal courts . . . have generally denied certification when allegedly discriminatory policies are highly discretionary and the plaintiffs do not point to a common mode of exercising discretion that pervades the entire company." *Tabor*, 703 F.3d at 1229 (internal quotations omitted).

2.     Plaintiffs' promotions class rests upon the very theory of commonality the Supreme Court rejected. Like the *Wal-Mart* plaintiffs, Plaintiffs framed their case around Nucor's purported policy to "'subjectivize[]' promotions to the point that supervisors and department managers . . . apply their own subjective opinion of what to consider and who to promote." JA 933 (Class Cert. Mot.); *accord Wal-Mart*, 131 S. Ct. at 2547. Like the *Wal-Mart* plaintiffs, Plaintiffs singled out discretion as the source of discrimination, arguing that Nucor's "reliance upon subjective procedures and criteria . . . permit and encourage the incorporation of racial stereotypes and bias." JA 63 (Compl.); *accord Wal-Mart*, 131 S. Ct. at 2548. Plaintiffs even cited the Ninth Circuit's subsequently overturned panel opinion in *Wal-Mart* at least *eight* times in their class-certification brief. JA 938, 960-61, 963-64, 968-69 (Class Cert. Br.).

Plaintiffs never attempted to show that "the exercise of discretion is tied to a specific employment practice, and that the subjective practice at issue affected the class in a uniform manner." *Scott*, 733 F.3d at 113 (internal quotations omitted).

Quite the contrary: the *only* policy Plaintiffs identified as affecting all class members is Nucor's delegation of promotions decisions to the discretion of decision-makers in each department—under which "each supervisor may follow different criteria." JA 942; *accord* JA 932-33, 962-65 (Class Cert. Mot. & Br.). Relying on the Ninth Circuit's overturned *Wal-Mart* panel opinion, Plaintiffs insisted that certification was appropriate "even though individual employees . . . with different managers may have [been] . . . denied promotion or promoted at different rates, because the discrimination they allegedly suffered occurred through an allegedly common practice—e.g., excessively subjective decision-making." JA 964 (quoting *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1232 (9th Cir. 2007)). When the Supreme Court rejected that theory in *Wal-Mart*, it foreclosed Plaintiffs' argument here. *See* JA 10955 (Order).

Other circuits' decisions applying *Wal-Mart* confirm that conclusion. In a companion case, Plaintiffs' counsel advanced the same theory of commonality to support certification at another Nucor plant. *Bennett v. Nucor Corp.*, 2006 WL 2473015, at *15-16 (E.D. Ark. Aug. 25, 2006). The Eighth Circuit agreed with the district court that Nucor's "[d]ecentralized decision making," combined with "the diversity of employment practices, job classifications, and functions among the production departments . . . precludes a finding that the commonality and typicality requirements are met" after *Wal-Mart*. *See Bennett*, 656 F.3d at 813-16 (internal

31

quotations omitted).   When plaintiffs sought certification based on a "highly discretionary" employee ratings policy, the Tenth Circuit held that certification was improper after *Wal-Mart* because that policy was not exercised "in any uniform manner." *Tabor*, 703 F.3d at 1229.  When plaintiffs in another case cited the "grant of discretion" to local construction site managers as the common policy linking their class, the Seventh Circuit likewise deemed certification inappropriate. *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 895, 898 (7th Cir. 2012).

3.    This Court's recent decision in *Scott v. Family Dollar* underscores that Plaintiffs' promotions class cannot be certified after *Wal-Mart*.  *Scott* read *Wal-Mart* as categorically barring certification in cases involving delegated discretion over employment decisions if (1) plaintiffs fail to identify any policy beyond discretion affecting employment decisions and (2) low-level managers exercise that discretion.  733 F.3d at 113-14.  This case shares both features.

a.    There is no identifiable promotion policy at Nucor-Berkeley other than the delegation of discretion to low-level decision-makers.  Plaintiffs argue for the first time that Nucor's Employee Handbook established "a common, plantwide promotion procedure that includes substantial involvement by the plant's General Manager, Ladd Hall."  Br. 47.  That contention flatly contradicts this Court's conclusion that "[a]lthough, by policy, the plant's general manager approves all promotions[,] . . . the record suggests that each department manager has unbridled

discretion to make promotions within his department utilizing whatever objective or subjective factors he wishes." *Brown*, 576 F.3d at 151.[10]

Plaintiffs' new argument also is a stunning about-face from their class-certification motion, which stressed Hall's *un*involvement in promotions. JA 944 (Class Cert. Br.); *supra* at 9. Plaintiffs also insisted that managers and supervisors "don't have to follow the company policy" in the Handbook because it was "a guideline that our department manager has the discretion to use." JA 944 (Class Cert. Br.) (quoting Hall Dep.). Plaintiffs represented, "Nucor has not established any promotion policy or criteria that supervisors and department managers are required to follow, and instead has allowed them to apply their own subjective opinion." JA 942 (Class Cert. Br.) Plaintiffs patterned their suit after *Wal-Mart*. They have not tried to amend their complaint now that *Wal-Mart* vitiated their central theory—and amending a complaint ten years after commencing litigation would be manifestly prejudicial. *Cf. Scott*, 733 F.3d at 117-19.

It is hard to see how Plaintiffs could change theories in any event, because they presented overwhelming proof of the *absence* of any specific practice that all supervisors and managers employed uniformly. Plaintiffs' declarations averred,

---

[10] Plaintiffs do not argue that a hostile work environment itself qualifies as a specific "policy" that uniformly affects the promotions class. Nor could they. Plaintiffs' theory of commonality for their hostile-work-environment claim depends on allegations of plant-wide comments by co-workers (*not* managers and supervisors, whom Plaintiffs singled out only in the Beam Mill). *See* JA 10967-68 (Order). Plaintiffs' promotions claim instead depends upon whether all *managers and supervisors* exercised discretion in a biased manner. A hostile work environment is not a specific policy tied to the exercise of discretion *in promotions decisions*.

"Supervisors and managers . . . are free to follow any procedures they choose on their own." JA 1004, 1017, 1026, 1034, 1042, 1052, 1064, 1082, 1086, 1092, 1098, 1107 (Plaintiffs' declarations). Plaintiffs' experts even opined that it would be impossible to identify any specific practice that uniformly affected promotions, because "promotions are based on a combination of criteria that are not weighted or applied in any discrete or quantifiable manner." JA 1167 (Fox/Bradley Rpt.).

b.      Finally, like *Wal-Mart*, this case involves discretionary decision-making by lower-level employees, not "upper-level, top-management personnel" capable of "set[ting] policies for the entire company." *Scott*, 733 F.3d at 114. In *Scott*, the "corporate Vice President," "regional managers[,] and senior vice presidents" had "authority over a broad segment of [the company's] employees." *Id.* at 117. *Wal-Mart* instead involved "local supervisors . . . vested with almost absolute discretion over pay and promotion decisions." *Id.* Like Wal-Mart's store managers, Nucor-Berkeley managers and supervisors—let alone the lead-men who often participate in promotions—cannot set plantwide policies. Their unfettered discretion over promotions extends only to their individual departments. *Supra* at 8-12.

### C.      Plaintiffs' Evidence Fails to Show Commonality

Plaintiffs cannot establish commonality for an independent reason: their statistical and anecdotal evidence falls short of "significant proof" that Nucor's supervisors and managers *in fact* "exercise[d] discretion in a common way with[]"

some common direction," *Wal-Mart*, 131 S. Ct. at 2555, as the district court held. JA 10941-54 (Order). That conclusion is nowhere close to an abuse of discretion.

> *1.* Wal-Mart *Repudiated This Court's Prior Approach to Reviewing the Evidence*

The *Brown* majority emphasized that the "threshold requirement[] of commonality" is "not high." 576 F.3d at 153 (internal quotations omitted); *accord Wal-Mart*, 603 F.3d at 596 n.17 (en banc) (citing *Brown*, 576 F.3d at 153). The majority held that anything beyond a "facial" look at Plaintiffs' evidence would be an improper "assessment on the merits." 576 F.3d at 156 n.10. The majority "reiterate[d] that an in-depth assessment of the merits of appellants' claims at this stage would be improper," citing the Supreme Court's decision in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). *Brown*, 576 F.3d at 156. The majority concluded that "even evidence that is of relatively weak probative value may be useful in meeting the commonality requirement," and deemed Plaintiffs' evidence sufficient for certification. *Id.* at 156 & n.10. The majority thus found that the district court's decertification decision committed an error of law by applying too stringent a standard for commonality—but the opinion did not identify any clearly erroneous fact-finding.

Judge Agee dissented, and his view was prescient. He expressed that the majority set the evidentiary bar too low: district courts were "*required* to undertake

a 'rigorous analysis,' not just of the plaintiffs' claims as pled, but of the evidence" to decide certification. *Id.* at 162.

Two years later, the Supreme Court in *Wal-Mart* addressed exactly the same issue—how to apply commonality—and came to the same conclusion as Judge Agee. *Wal-Mart* demanded a "rigorous analysis" of anecdotal and statistical evidence, 131 S. Ct. 2553, reasoning that "Rule 23 does not set forth a mere pleading standard," and that plaintiffs "must be prepared to prove that there are *in fact* sufficiently . . . common questions of law or fact." *Id.* at 2551. The Court clarified that any "rigorous analysis" often "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* (internal quotations omitted). The Court dismissed the contrary statement in *Eisen*—cited and relied upon by the *Brown* majority, 576 F.3d at 156—as "the purest dictum and . . . contradicted by our other cases." 131 S. Ct. at 2552 n.6. *Wal-Mart* thus squarely rejected *Brown*'s "facial class certification assessment." 576 F.3d at 156 n.10.

Of course, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). But contrary to Plaintiffs' suggestion, Br. 35-38, *Amgen* is irrelevant here and certainly did not undercut *Wal-Mart*. *Amgen* merely held that plaintiffs do not need to prove the "materiality" element of a

securities fraud claim at the class certification stage, and did not even involve Rule 23(a).   133 S. Ct. at 1190-91.   That is entirely consistent with *Wal-Mart*'s conclusion that in Title VII pattern-or-practice cases, "proof of commonality necessarily overlaps with respondents' merits contention that [the company] engages in a *pattern or practice* of discrimination."  *Wal-Mart*, 131 S. Ct. at 2552. The same question—whether a particular policy universally disadvantaged an entire class in promotions decisions—determines whether the class shares common issues of law and fact and whether plaintiffs have a substantive Title VII claim.

In sum, *Wal-Mart* "heightened the standard under Rule 23(a)(2)" by requiring a  "rigorous analysis of the merits" to make a commonality determination in this type of case.   JA 10940, 10948 (Order).   As Plaintiffs stress, the facts remain the same.   Br. 34.   The district court is entitled to its broad discretion in applying those same facts to the now-corrected legal rule.   The court did not abuse its discretion in holding that neither Plaintiffs' statistical evidence nor their declarations showed that a common policy of discrimination uniformly affected promotions across the plant.

### 2.   *Plaintiffs' Statistical Evidence Is Inadequate Proof of Plantwide Discrimination*

a.    Indisputably, the actual data for 2001-2003, the three-year period before suit was filed, *do not* contain statistically significant evidence of racial discrimination in promotions at Nucor-Berkeley.   Both parties' experts agreed on that point.

*Brown*, 576 F.3d at 159 n.9; JA 1449-50 (Fox Dep.); JA 5891 (Welch Rpt.). During those three years, 28 bidders (16% of all bidders) on 36 relevant promotions were African-American, and 6 promotions (16.67%) went to African-Americans. JA 1418-19 (Fox. Dep.). African-Americans thus were *at least* as likely to be promoted as anyone else. *Cf.* JA 5886 (Welch Rpt.).[11]

To show discrimination through a statistical analysis, plaintiffs presented hypothesized promotions data that Plaintiffs' statisticians Drs. Fox and Bradley prepared for December 1999 to January 2001.[12] The statistics they created for this period assumed that African-American candidates had an abnormally low success rate and a markedly high bidding rate. Adding this data to the actual data, Plaintiffs' experts concluded that African-Americans faced statistically significant discrimination. Their final numbers showed that during that whole 1999-2003 period, only 7.94% of purported promotions went to African-Americans, who purportedly comprised 19.24% of all bidders. JA 1162 (Fox/Bradley Rpt.).

The *Brown* majority held that Plaintiffs' statistical analysis was "adequate to establish commonality." *Brown*, 576 F.3d at 156. The majority reasoned that

---

[11] These six promotions were awarded to Rick Ravenell (Cold Mill, 6/6/02, JA 675, 7512-20); Jaron Lawrence (Hot Mill, 7/2/02, JA 674, 7498-08); Alvin Simmons (Beam Mill, 2/26/03, JA 664, 7606-13); Daryl Wright (Melt Shop, 6/9/03, JA 676, 7632-36); Michael McNeil (Melt Shop, 11/20/03, JA 676, 7666-71), and Theron Denmark (Cold Mill, 7/3/01, JA 6234, 7266-79).

[12] Though Plaintiffs cite portions of Fox and Bradley's report suggesting that the actual data showed possible discrimination based on comparisons to the external labor market, Br. 6-7, the district court rejected that comparison, and this Court did not disturb that holding. JA 8986-87 (Order); *Brown*, 576 F.3d at 153-54. The external labor market is irrelevant because Nucor promotes from within. JA 10937 n.4 (Order).

while the flaws in the evidence "might very well discredit the appellants' statistics later, upon a full review of the merits," *id.* n.10, only a "facial class certification assessment" was proper. *Id.*

That assessment is incompatible with *Comcast* and *Wal-Mart*, which demand a searching analysis of the reliability and persuasiveness of statistical evidence at the class-certification stage even though the analysis may overlap with the merits. *Comcast* thus reversed the Third Circuit's refusal to delve into the merits of plaintiffs' statistical methodology. Citing *Wal-Mart*, *Comcast* held that the Third Circuit's "reasoning flatly contradicts our cases requiring a determination that Rule 23 is satisfied, even when that requires inquiry into the merits of the claim." *Comcast*, 133 S. Ct. at 1433.

b.   On remand, the district court properly reassessed Plaintiffs' statistical analysis to determine whether this case could proceed as a class. The court's findings that Plaintiffs' analysis was "fundamentally unreliable" and "inherently faulty" are owed substantial deference, and in all events are correct. JA 10941, 10944 (Order).

Fox and Bradley created alternate data for December 1999 to January 2001 using a series of conjectures that rightly did not inspire confidence. As discussed, Nucor did not retain bidding records for that period, and had no obligation to do so. *Supra* at 13 & n.5. Nucor retained, however, "change of status" forms in

39

employees' files.  Fox identified purported promotions for this period by going through the records of employees who bid on relevant jobs in 2001-03, identifying change-of-status forms in their files from 1999-2000, and cherry-picking forms she deemed relevant.  JA 1404-11 (Fox Dep.).

Plaintiffs' process yielded 27 change-of-status forms for the thirteen-month period from December 1999 to January 2001.  Fox and Bradley assumed all 27 forms recorded actual promotions to different jobs.  But change-of-status forms are filled out for actions as varied as hirings and firings, pay raises, grade promotions or demotions, and job promotions or demotions.  *E.g.*, JA 11021, 11028 (illustrating ambiguous forms).  An employee might have a change-of-status form because he received a raise in his existing position, or because he transferred to a lower-level position to get a daytime shift.

Plaintiffs' experts further assumed all purported promotions were open for bidding, even though this fact is ascertainable only if the supervisor filling out the change-of-status form noted it.  JA 1404-07 (Fox Dep.); *e.g.*, JA 11027-32 (examples of forms that do not indicate bidding).  The experts also assumed African-Americans applied for *every single one* of those promotions—a crucial fact that Fox admitted she had "no way of knowing" because change-of-status forms *never* list other applicants.  JA 1405 (Fox Dep.); *accord* JA 10943-44 (Order).  This assumption is critical because promotions for which *no* African-

American applied by definition cannot give rise to any inference that African-Americans were denied promotions they sought. Yet Fox and Bradley "could point to only one instance where they knew for sure that an African-American" had sought a promotion—and, ironically, only because the African-American candidate received the job. JA 10943-44 (Order); *accord* JA 1405-07 (Fox Dep.).

The district court could not verify whether any of these assumptions were true for the 27 change-of-status forms, because Plaintiffs never introduced those forms into the record "[d]espite repeated criticism of their analysis" by the court. The court dismissed any notion that only Plaintiffs' experts could understand those forms, stating that it was "every bit as qualified as the plaintiffs' experts to look at an employment record and determine what, if anything, it represents." JA 10942-43 (Order).[13]

The court was understandably skeptical of the experts' astonishing and counter-intuitive conclusions. By assuming that all 27 forms reflected promotions for which at least one African-American applied, Plaintiffs' experts concluded that in thirteen months, Nucor filled almost as many relevant promotions as it did in the

---

[13] That is especially so because Fox and Bradley's qualifications in this field are suspect. As biostatisticians—*i.e.*, experts in applying statistics to health-related issues—their only knowledge of employment discrimination came from being paid to testify for Plaintiffs' counsel's firm in numerous cases. JA 1305-06 (Fox Dep.); JA 1236 (Bradley Dep.); JA 1176-1212 (resumes and publications). Bradley appears to have distinguished himself in the employment field only by the number of cases in which courts have rejected his analyses. *E.g.*, *Bennett*, 656 F.3d at 815-16; *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 259, 261-63 (4th Cir. 2005); *Yapp v. Union Pac. R.R. Co.*, 229 F.R.D. 608, 619-20 (E.D. Mo. 2005); *Rhodes v. Cracker Barrel Old Country Store, Inc.*, 213 F.R.D. 619, 652, 655, 658, 659-60, 667 (N.D. Ga 2003).

41

ensuing *three years*, during which the actual data showed *36 total* promotions.  JA 1418 (Fox Dep.).  Because only one of the 27 forms reflected a clear promotion of an African-American employee, Fox and Bradley also surmised that during this period, only one African-American (3.7% of purported applicants) was promoted.  JA 1407 (Fox Dep.).  That result is particularly astounding because the actual data shows that during the following three years, African-Americans were *four times* as successful, and obtained over 16% of the promotions they sought.

In addition to hypothesizing an implausibly low success rate for African-Americans, Plaintiffs' experts made African-Americans' bidding rates appear artificially high.  They assumed at least one African-American bid on all 27 "promotions" from December 1999 to January 2001, and that African-Americans bid on those jobs at a rate equal to the weighted average of African-American bidders on actual promotions in 2001-2003.  JA 1419-21 (Fox Dep.); *Brown*, 576 F.3d at 154.  This weighted average "necessarily inflated" the projected bidding rate for the earlier period, and thus "almost certainly overstates the expected number of African-American promotions."  JA 10943-44 (Order).

Fox and Bradley inferred discrimination only after they combined the conjecture-laden data they created for December 1999 to January 2001 with Nucor's actual data for the following three years.  JA 10944 (Order).  They invented nearly half of the combined data set, hypothesized an implausibly low

42

African-American promotion rate, and assumed an inflated African-American bidding rate. The court below correctly concluded that these "self-serving" assumptions rendered Plaintiffs' statistical evidence "fundamentally unreliable" and "inherently faulty." JA 10941, 10944 (Order). "Allowing the plaintiffs to utilize such statistics to satisfy their burden to present significant proof of a common policy of discrimination effectively permits them to assume what they would otherwise be required to prove." JA 10944; *accord Brown*, 576 F.3d at 167 (Agee, J., dissenting in part).[14]

Following the district court's decertification holding below that criticized Plaintiffs' refusal to identify the 27 change-of-status forms their experts cherry-picked from thousands of pages of records, Plaintiffs belatedly appended the forms to their September 2012 motion to reconsider. JA 10999-11033 (App. B-Forms). Those forms highlight just how questionable Fox and Bradley's assumptions were. Some forms list transfers or the completion of probationary periods, not necessarily promotions. *E.g.*, JA 11028. Few reveal whether positions were posted for bidding. JA 11006-15, 11019-21, 11023, 11026-32. None, of course, specify how many African-Americans, if any, bid on these positions.

---

[14] The district court excluded actual data from 2003 to 2006, reasoning that promotion data from after this lawsuit was filed might improperly favor Nucor. JA 8988 n.4 (Order).

c.    Even if Plaintiffs' statistics were reliable—which they manifestly were not—they still would not establish commonality.  Under *Wal-Mart*, a statistical disparity in class promotions does not show that plaintiffs' *theory of discrimination* is capable of classwide proof.  The *Wal-Mart* plaintiffs claimed to represent a nationwide class, and produced evidence of nationwide and regional disparities in women's promotion opportunities as proof of a common injury.  131 S. Ct. at 2555.  The Supreme Court dismissed this evidence: "Even if . . . taken at face value," these statistics were "insufficient to establish that [plaintiffs'] theory can be proved on a classwide basis."  *Id.*  Because plaintiffs' theory was that each *store manager* made discretionary promotions decisions favoring men, their burden was to prove a "uniform, store-by-store disparity."  *Id.*  Plaintiffs' proof of nationwide and regional disparities could not meet this burden: such aggregate results "may be attributable to only a small set of Wal-Mart stores," and were no indication that *each store* perpetuated disparities.  *Id.*

Plaintiffs' statistical evidence suffers from the same flaws.  Plaintiffs' theory is that each supervisor or manager in each Nucor-Berkeley department exercises discretion over promotions in a common, discriminatory way.  Rather than presenting evidence that each decision-maker (or even each department) disfavored African-American candidates, Plaintiffs' experts grouped all promotions together *plantwide*.  JA 1157 (Fox/Bradley Rpt.); *cf.* Br. 48-49.  This was precisely the

44

theory and evidence that Plaintiffs' counsel presented in *Bennett* to show commonality for a similar putative class of African-American employees at a single Nucor plant; Plaintiffs even used the same expert. The Eighth Circuit determined that "plaintiffs' statistical . . . evidence falls short of satisfying [their] burden" under *Wal-Mart*. *Bennett*, 656 F.3d at 815. The court held that "the statistical evidence presented by [plaintiffs'] expert . . . has little value in the commonality analysis, because Dr. Bradley assumed . . . that all department managers follow a single common hiring and promotion policy." *Id.* But "[w]here there is strong evidence that employment practices varied significantly from department to department, such a bottom-line analysis is insufficient to demonstrate that any disparate treatment or disparate impact present in one department was also common to all the others." *Id*. at 815-16 (citing *Wal-Mart*, 131 S. Ct. at 2555). So too here.

d.     Plaintiffs barely defend their statistics in this Court, although they previously acknowledged that "if there's not a statistical difference . . . [t]he class certification issue is dead in the water." JA 198-99, 201 (Mot. Hr'g). Plaintiffs accuse the district court of "assuming . . . that the nine Change-of-Status records listed in the dissent to this Court's mandate," which Judge Agee identified from the Joint Appendix, "were part of the 27 promotions included in the statistical evidence." Br. 39-42. That is demonstrably false.

In *Brown*, Judge Agee expressed concern about Plaintiffs' assertion that the 27 change-of-status forms reflected promotions. 576 F.3d at 167-68. Presumably because those 27 forms were not in the record, he looked for other change-of-status forms that were in the record. *Id.* He found several forms from 2000 that did not appear to reflect promotions open for bidding; based on the ambiguities inherent in all change-of-status forms, Judge Agee doubted that such forms were a reliable means of gauging "promotion positions available for employee bidding." *Id.* at 168.

On remand, the court gave no weight to the nine records; they were mentioned only once in its opinion, as an incidental part of a block quote from Judge Agee's dissent. JA 10942 (Order). The only part of the quote the district court emphasized—that "it is difficult, if not impossible, to discern whether the 2000 data based on the nebulous change-of-status forms proves those positions were promotion positions available for employee bidding"—is true of *all* change-of-status forms. *Id.* The district court further indicated it was *not* relying on the nine forms, stating: "the Court has never seen the 27 change-of-status forms upon which [Plaintiffs'] experts apparently relied." JA 10943 (Order). Even if the court had considered the nine forms, they underscore the arbitrary fashion in which Plaintiffs' experts handpicked purportedly relevant forms.

Nucor's failure to maintain data before this suit was filed does not relieve Plaintiffs of the same standards of proof in other cases. This is not a case where plaintiffs' use of extrapolated data is necessary to remedy a defendant's violation of a statutory duty to maintain applicant data; Nucor behaved entirely properly. *Cf. United States v. Cnty. of Fairfax*, 629 F.2d 932, 937 n.4 (4th Cir. 1980). Even in *Fairfax*, this Court allowed the plaintiff to project an alternate set of data based on existing data by extrapolating only a single variable (the applicant pool). *Id.* at 940. Here, Plaintiffs' experts hypothesized data for two different variables, the bidding rate and the success rate for African-American applicants, further undercutting the data's reliability.

### 3. *Plaintiffs' Anecdotal Evidence Fails to Show a Common, Plantwide Policy of Discrimination*

a. Addressing Plaintiffs' anecdotal evidence in a single paragraph, the prior opinion found "compelling direct evidence of discrimination" based on "denials of promotions when more junior white employees were granted promotions, denial of the ability to cross-train during regular shifts like their white counterparts, and a statement by a white supervisor that he would never promote a black employee." *Brown*, 576 F.3d at 153 (internal citations omitted). That evidence came solely from a former Beam Mill supervisor, JA 1885-86 (Cook Dep.), and three Beam Mill employees. JA 1000-04 (Roane Decl.); JA 1009-18 (Brown Decl.); JA 1021-23 (Simmons Decl.). Despite acknowledging that "each department manager has

unbridled discretion to make promotions within his department," *Brown*, 576 F.3d at 151, the majority concluded that the above anecdotal evidence "alone establishes common claims . . . worthy of class certification" for the entire plant. *Id.* at 153.

Under *Wal-Mart*, however, anecdotal evidence must be both representative and plentiful "to raise any inference that all the individual, discretionary personnel decisions are discriminatory." 131 S. Ct. at 2556. Plaintiffs' anecdotes of alleged discrimination must be "spread throughout the company" (or here, the plant). *Id.* (internal quotations omitted). Courts cannot infer that *all* managers exercise discretion in a discriminatory manner on the basis of a few, isolated decision-makers, because "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." *Id.* at 2554.

b.    Applying this standard, the district court held that Plaintiffs' anecdotes failed to establish commonality because "all of the individuals who offered the testimony cited by the Fourth Circuit worked primarily in a single department—the Beam Mill." JA 10949 (Order). Moreover, "[a]necdotes from the Beam Mill dominate not only the evidence cited by the Fourth Circuit majority, but also the record as a whole." JA 10950 (Order). These findings are not clearly erroneous. Nor was it an abuse of discretion to conclude that Plaintiffs "failed to present 'significant proof' that the departments encompassed within the current class operated under a common policy of discrimination," since "[s]trong evidence of discrimination in

48

one store or department is not a substitute for proof that the class has suffered a common injury or proof that the defendant operates under a general policy of discrimination." JA 10953-54 (Order).

The "scope of [Plaintiffs'] evidence" unquestionably "does not correspond" to the entire plant-wide class. JA 10951 (Order). Eleven of Plaintiffs' sixteen declarations—the vast majority—came from Beam Mill employees. *None* are from Cold Mill or Maintenance employees. Only one Melt Shop employee and one Shipping employee were represented, and only three declarants were Hot Mill employees. JA 10950 (Order).

Even those numbers understate how overwhelmingly Plaintiffs' allegations centered on the Beam Mill. Plaintiffs' declarations barely mention any decision-makers outside the Beam Mill. When this suit was filed, Nucor-Berkeley employed six department managers and at least 55 supervisors. *Supra* at 8-12. But Plaintiffs' declarations center on allegations of discrimination by the Beam Mill's Manager and three of its five supervisors. *See* JA 10951-53 (Order). As the district court found, "the *vast* majority of the direct evidence alleging clear racial bias on the part of managers and supervisors concerns one manager and three supervisors, all of whom worked in the Beam Mill." JA 10953 (Order). The notion that all sixty-some managers and supervisors discriminated on the basis of race simply because a handful of Beam Mill decision-makers allegedly did so is

contrary to *Wal-Mart* and unfairly brands scores of innocent and wholly independent decision-makers. *See* 131 S. Ct. at 2554.

Plaintiffs' declarations barely feature allegations of discrimination in promotions outside the Beam Mill. Plaintiffs' lone Shipping declarant only bid on Beam Mill promotions and never alleged discrimination in promotions in Shipping. JA 1116-19 (Beaufort Decl.). Plaintiffs' lone Melt Shop declarant did not claim to have been denied *any* promotions based on race. He claimed he was deterred from applying for promotions because he believed his supervisor "would not give me a good recommendation" based on "the look on his face." JA 1110-11 (E. Ravenell Decl.). Only one of Plaintiffs' three Hot Mill declarants alleged discrimination in promotions between December 1999 and December 2003. *Compare* JA 1090-93 (Nick Decl.), *with* JA 1050-51 (Singletary Decl.), *and* JA 1122-24 (Turner Decl.).

Even the declarants Plaintiffs profiled at length to show discrimination beyond the Beam Mill, Br. 9-23, lead back to the Beam Mill. For instance, Jason Guy, whom Plaintiffs portray as a Cold Mill and Melt Shop employee, *id.* at 9, 12-14, received a promotion he sought from the Cold Mill to the Beam Mill, and worked in the Beam Mill thereafter. While there, Guy applied for ten jobs—seven in the Beam Mill—and attributed his lack of success to his Beam Mill supervisors, not to other departments' decision-makers. JA 1061-64 (Guy Aff.).

Alvin Simmons, whom Plaintiffs portray as experiencing discrimination in the Hot Mill and Melt Shop, Br. 12, attested that he "always worked in the Finishing area of the Beam Mill department." From there, Simmons applied unsuccessfully for eight jobs; at least four were Beam Mill positions. He, too, blamed his Beam Mill supervisors for his lack of success. JA 1021-24 (Simmons Aff.). Aaron Butts, whom Plaintiffs claim faced discrimination in multiple departments, Br. 15, worked in the Melt Shop and later the Beam Mill. He also suggested his lack of success in promotions—all of which were in the Beam Mill—were due to a single Beam Mill supervisor. JA 1085-86 (Butts Aff.); JA 4363, 4377 (Butts Decl.).

Eric Conyers, whom Plaintiffs singled out as illustrating plantwide discrimination, Br. 15-16, attested that he worked only in the Beam Mill since "soon after" he was hired. JA 4067 (Conyers Aff.); JA 1079 (Conyers Decl.). Conyers similarly blamed two Beam Mill supervisors for allegedly thwarting his promotions elsewhere. JA 1080 (Conyers Decl.).

Guy, Simmons, Butts, and Conyers are each profiled in a section of the Plaintiffs' brief entitled: "The Evidence Was Sufficient Across All Six Production Departments." Br. 8. All are listed—Guy and Simmons twice—as having worked in or been denied promotions to other departments. *Id.* at 9. But these declarants

instead prove the district court's point: Plaintiffs' anecdotal evidence illustrated nothing about promotions outside the Beam Mill.

Moreover, 80 affidavits Nucor obtained from African-American employees before Plaintiffs filed suit confirm that "[n]ot all African-Americans at Nucor feel like they have been discriminated against," and "[w]hatever is happening at the beam mill is not a plant wide problem."  JA 6109 (Carson Aff.); *accord* JA 6441 (Hunigan Aff.); JA 6724 (R. Porcher Aff.).[15]

In the Cold Mill, no affiants "claimed to have been unfairly denied a promotion on the basis of race," as the district court found.  JA 10950 (Order).  "I have not heard anybody complaining about promotions, and everyone has moved up," summed up one employee.  JA 6724 (R. Porcher Aff.).  In Shipping, not one African-American employee averred that promotions decisions were based on race.[16]  "In Shipping, there are no race related problems," one employee concluded. JA 6313 (Grant Aff.).

In the Melt Shop, an "overwhelming majority" of the 23 African-American employees "said they did not believe that they had ever been denied a promotion on the basis of race."  JA 10950-51 (Order).  In the Hot Mill, "a significant

---

[15] The fact the district court reviewed approximately 80 affidavits is particularly powerful considering that only 70 to 80 African-Americans were employed at the plant at any given time. *See* Br. 48-49.

[16] JA 6004-09 (Beaufort Aff.); JA 6022-23 (Black Aff.); JA 6312-14 (Grant Aff.); JA 6491-6499 (Kiger Aff.); JA 6789-6800 (Roberson Aff.); JA 6802-10 (Robinson Aff.); JA 6853 (Scott Aff.); JA 7020-23 (Williams Aff.).

majority of . . . employees denied that they had been denied promotions on the basis of race." JA 10951 (Order).[17] An African-American supervisor stated, "Thad [Solomon, department manager] is good because he makes us justify our promotion decisions to him so that when we talk to an employee we can tell them areas to improve on." JA 6717 (A. Porcher Aff.). The district court did not clearly err in concluding that Plaintiffs' evidence was confined to the Beam Mill.

c.    Plaintiffs' contrary arguments are meritless. First, Plaintiffs suggest that because this Court previously found that the plant was a single environment for purposes of Plaintiffs' hostile-work-environment class, evidence of discrimination in Beam Mill promotions shows plantwide discrimination in promotions. Br. 27-28, 44-47. This Court's prior holding, of course, involved no independent fact-finding. The majority rather assumed, under a pre-*Wal-Mart* view of the evidence, that plant departments were not physically segregated into separate environments and comments and actions in one department could affect other departments' employees as well. *Brown*, 576 F.3d at 158.

Plaintiffs ignore the district court's careful explanation of why the hostile-work-environment findings did not show that *supervisors and managers* outside

---

[17] *Compare* JA 6050-57 (Blanco Aff.); JA 6088-90 (W. Brown Aff.); JA 6112-14 (Cills Aff.); 6169-73 (DasGupta Aff.); JA 6256-59 (Dunn Aff.); JA 6324-25 (Grice Aff.); JA 6380-82 (Harleston Aff.); JA 6434-41 (Hunigan Aff.); JA 6451 (Irving Aff.); JA 6531-33 (Litchfield Aff.); JA 6696 (Phillips Aff.); JA 6705-11 (A. Porcher Aff.); JA 6867-69 (Sheppard Aff.); JA 6961-66 (Turner Aff.), *with* JA 5989-94 (Barnes Aff.); JA 6136-48 (Cobin Aff.); JA 6504-07 (Lawrence Aff.); JA 6653-54 (Nick Aff.).

the Beam Mill employed a common, discriminatory promotions policy. JA 10966-67 (Order). The court certified a hostile-work-environment class on the ground that African-Americans across the plant were subjected to alleged racial slurs and abusive behavior. In the Beam Mill, one manager and three Beam Mill supervisors were allegedly involved. But in other departments, "[c]laims of harassment . . . typically do not involve managers and supervisors participating directly in the harassment," and instead allege misconduct by *co-workers*. *Id.* at 10967; *accord* JA 10951, 10953 (Order). The hostile-work-environment evidence—which Nucor disputes, in any event—does not suggest that decision-makers outside the Beam Mill exercised their discretion over promotions in a common, discriminatory manner. The cases on which Plaintiffs rely, Br. 45-47, similarly hold only that past instances of discrimination "by [a] decisionmaker" against others can be admissible against that *same* decisionmaker to show state of mind. *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1133 (4th Cir. 1988); *accord Kozlowski v. Hampton Sch. Bd.*, 77 F. App'x 133, 147-49 (4th Cir. 2003).

Second, Plaintiffs contend that Beam Mill decision-makers "directly affected" employees who wanted to be promoted into the Beam Mill. Br. 47. But that argument still does not show that a plantwide class of employees who sought promotions into other departments—*i.e.*, the vast majority of Plaintiffs' existing class—should be certified. Plaintiffs do not rebut evidence that employees

54

applying for promotions outside their own department are less likely to obtain the promotion irrespective of their race, because they are less familiar with the specifics of other departments' jobs. *Supra* at 10.

Third, Plaintiffs' argument that "the same pattern-or-practice of promotion discrimination extends throughout" because Nucor "produced . . . 'similarly situated' [promotions] across the six production departments" and "[t]hose promotions were spread proportionately across the Hot Mill, Cold Mill, Melting and Beam Mill" is new, and a non-sequitur. Br. 8-9, 43-44, 47-48. The fact that African-Americans applied for similarly situated promotions across four departments (not six, as Plaintiffs contend, since there is no evidence about Shipping or Maintenance) reveals nothing about whether African-Americans *actually faced discrimination* in those promotions. The only revealing fact about this data is that even Plaintiffs' experts concluded that it evinced no statistically significant evidence of discrimination for the three-year period immediately before suit was filed. *Supra* at 38.

Fourth, Plaintiffs contend that their declarations show plantwide discrimination in promotions because, although only five declarants worked in non-Beam Mill departments, others worked elsewhere before joining the Beam Mill, "or were denied promotions to non-Beam Mill jobs." Br. 9; *id.* at 8-17, 43. But a closer look at Plaintiffs' selected declarants, *id.* at 9-10, again reveals that

their allegations disproportionately concerned the Beam Mill. Plaintiffs did not identify any discrimination in Maintenance. *Id.* Their only evidence about Shipping remains the declaration of one employee who applied for a Beam Mill promotion. JA 1118-19 (Beaufort Decl.). Their purported Cold Mill declarants do not show discrimination outside the Beam Mill. Some never applied for Cold Mill promotions. JA 1118-19 (Beaufort Decl.); JA 5691 (J. Singletary Dep.). Or they applied outside the period of this suit. JA 1103 (Spann Decl.). Or they obtained Cold Mill promotions but had their transfers blocked by Beam Mill supervisors. JA 1063 (Guy Decl.).

Plaintiffs' purported Melt Shop declarants likewise alleged they were deprived of Melt Shop jobs because of their Beam Mill supervisors. *E.g.*, JA 1032-33 (J. Ravenell Decl.). Or they did not apply for promotions. JA 1110-11 (E. Ravenell Decl.). Plaintiffs' purported Hot Mill declarants similarly do not allege that they were qualified (or even applied) for Hot Mill promotions. JA 995 (Roane Decl.); JA 1122 (Turner Decl.).

Finally, Plaintiffs suggest that Nucor's affidavits reveal discrimination because six Cold Mill affiants purportedly stated a *prima facie* case for discrimination without even knowing it. Br. 57 (citing Dennard, Runnells, Blackwell, Watson, Moore, and "Marella-Scott" affidavits). That is patently false. Craig Dennard stated, "I do not believe that I have ever been denied a promotion or

transfer because of my race," and explained that a white employee received a promotion Dennard also sought because Dennard, by his own admission, "was not the best-qualified candidate." JA 6246-47 (Dennard Aff.). Herbert Runnells stated that in one promotion he bid upon, a white employee was promoted after already "doing the job for 4 months." Runnells added that "[n]o one in their right mind would take out someone who had been doing the job for that length of time and put in someone else." JA 6837 (Runnells Aff.).

Dean Blackwell identified a single job that he bid on but did not get an interview. He did not identify the successful candidate's race, did not attribute his failure to be interviewed to discrimination, and added that he obtained a different promotion. He concluded that he was unaware of any racial discrimination in promotions. JA 6039-42 (Blackwell Aff.).

Kenneth Watson described one instance when he bid on a job but did not receive it—because he "turned down the job" before any decision was made after feeling "stressed out" about the new position and concluding that he "needed a bit more knowledge about the mill." Watson then described *two* instances in which he obtained a promotion over non-African-American bidders. JA 6994-95 (Watson Aff.).

Macella Scott Davis and Anthony Moore never bid on promotions. JA 6196 (M. Davis Aff.); JA 6636 (Moore Aff.). Davis knew of no instance where racial

discrimination played a role in promotions, and avouched that "[h]ere, promotions are based on merit." JA 6197. Moore "like[d] the job" he was in, felt his supervisor was "fair," and stated, "I would rather work for him than anybody." JA 6634, 6636. Plaintiffs *selected* these examples—and yet again, they disprove Plaintiffs' point.

### 4.    The District Court Properly Considered Nucor's Affidavits

Plaintiffs assert that the eighty affidavits Nucor introduced after conducting voluntary interviews with African-American employees as part of a 2003 pre-lawsuit internal investigation were "misleading" and coercive, were waived, and never should have been admitted or considered. Br. 50-61. Plaintiffs fail to mention that the district court already rejected these exact arguments *six* years ago. Far from being deprived of "notice or an opportunity to be heard," *id.* at 50, Plaintiffs submitted over 170 pages of briefing and exhibits concerning the affidavits before the court below ruled on their admissibility. JA 9393 (Mot. to Exclude); JA 9534 (Reply in Supp. of Mot. to Exclude). Nucor documented to the court that every employee was clearly informed that the interviews were voluntary and would carry no reprisals; that no employee ever complained of any coercion; and that hand-written corrections in several affidavits showed that employees fully controlled their own statements. JA 9524-32 (Resp. to Mot. to Exclude). In

denying Plaintiffs' motion, the court observed that the circumstances of the affidavits "may go to [their] weight." JA 9001-02 (Order); JA 10950 n.14 (Order).

Plaintiffs cannot use Rule 23(f) as a vehicle for collateral review of the district court's long-ago ruling.[18]  In any event, the district judge acted well within his discretion in admitting the affidavits.  "[E]mployers are free to communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit."  *Slavinski v. Columbia Ass'n, Inc.*, 2011 WL 1310256, at *3 (D. Md. Mar. 30, 2011) (internal quotations omitted); *accord* 5 Newberg on Class Actions § 15:9 (4th ed.).  There also is no evidence of coercion.  Affiants were told, in writing, that Nucor was conducting interviews because of "charges of discrimination filed by African-American employees," that participation was "voluntary," and that no one would be retaliated against for refusing to participate or for saying "negative things" about Nucor.  *E.g.*, JA 6003 (sample form).  Plaintiffs identify only three of 80 affiants who purportedly changed their tune later, and zero who claimed coercion.

When the district court deemed the affidavits admissible in 2007, Plaintiffs should have anticipated that the court would consider the affidavits when evaluating certification.  Plaintiffs' assertion that Nucor somehow "waived or

---

[18]  Likewise Rule 23(f) is not a basis for Plaintiffs to request that this Court reverse the district court's discovery ruling and "require production of records surrounding all vacancies that have been posted or filled since December 8, 1999."  Br. 61; *Brown*, 576 F.3d at 155-56 n.8.

abandoned" reliance on these affidavits during the last appeal, Br. 51-52, is wrong. Plaintiffs *lost* their motion to exclude these affidavits, *lost* on class certification, and were the appellants in the last appeal. Nucor obviously did not need to remind Plaintiffs that the admissible affidavits disproved the grounds for class certification.

In short, the district court addressed Plaintiffs' concerns and appropriately incorporated the affidavits when weighing the certification evidence. The district court was required to consider Nucor's affidavits—along with all other already-admitted evidence—to ascertain whether Plaintiffs adduced "significant proof" that Rule 23 was met. *See Wal-Mart*, 131 S. Ct at 2553 (internal quotations omitted); *Davis v. Cintas Corp.*, 717 F.3d 476, 485-88 (6th Cir. 2013). That obligation applied every time the court considered class certification, including on remand. After *Wal-Mart* called for a "rigorous" factual analysis on certification decisions, the district court did just that by carefully considering the affidavits, according them "limited weight," disregarding any that conflicted with Plaintiffs' declarations, and using them to "confirm" already-identified flaws in Plaintiffs' arguments. JA 10950-51 & n.14 (Order).

\* \* \*

This appeal is not about giving Plaintiffs their day in court. Nucor, too, is eager for its day in court when it believes it will prevail. The only issue before this

Court is whether this case can proceed as a class action. The district court's decertification decision is manifestly correct given Plaintiffs' inability to satisfy either Rule 23(a) or Rule 23(b)(3). Affirming that decision allows Plaintiffs to proceed on an individual basis so that this long-running case can come to an end.

### CONCLUSION

This Court should affirm the district court's judgment decertifying Plaintiffs' promotions class.

### STATEMENT REGARDING ORAL ARGUMENT

Appellees do not oppose appellants' request for oral argument.

Dated:  November 18, 2013                Respectfully submitted,

                                          /s/ Lisa S. Blatt
                                         Lisa S. Blatt
                                         Dirk C. Phillips
                                         Sarah M. Harris
                                         ARNOLD & PORTER LLP
                                         555 Twelfth Street, NW
                                         Washington, DC  20004
                                         (202) 942-5000
                                         (202) 942-5999 (fax)
                                         lisa.blatt@aporter.com

Cary A. Farris
John K. Linker
J. Shannon Gatlin
ALANIZ SCHRAEDER LINKER
FARRIS MAYES, LLP
2500 CityWest Blvd.
Suite 1000
Houston, TX 77042
(281) 833-2200

J. Tracy Walker, IV
Robert L. Hodges
Matthew A. Fitzgerald
MCGUIREWOODS, LLP
One James Center
901 East Cary Street
Richmond, VA 23219
(804) 775-1000

*Counsel for Appellees Nucor Corporation and Nucor Steel-Berkeley*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), that the attached Brief of Appellees:

(1) contains 13,888 words;

(2) complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2007, in 14-point Times New Roman font;

(3) has been scanned for viruses using Sophos Endpoint Security (version 9.7) and is free from viruses; and

(4) that the text of the electronic brief is identical to the text in the paper copies.


Dated:  November 18, 2013          /s/  Lisa S. Blatt
                                   Lisa S. Blatt

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2013, I electronically filed the foregoing *Brief of Appellees* with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit via the Court's appellate CM/ECF system. Participants in the case who were registered CM/ECF users were served by the CM/ECF system at that time.

Further, I hereby certify that on November 18, 2013, I served eight (8) paper copies on the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit via Federal Express Priority Overnight.  I also served one paper copy via Federal Express Priority Overnight on the following:

Armand Derfner
D. Peters Wilborn, Jr.
Derfner, Altman & Wilborn
40 Calhoun Street, Suite 410
Charleston, SC 29402
(843) 723-9804

Robert L. Wiggins, Jr.
Ann K. Wiggins
Wiggins, Childs, Quinn & Pantazis LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205 314-0500

Dated:  November 18, 2013          /s/  Lisa S. Blatt
                                   Lisa S. Blatt